IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


PATRICK M. MILTON,
      Petitioner,

vs.                                   Case No.:  3:11cv499/LAC/EMT

KENNETH S. TUCKER,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (docs. 20, 22).  Petitioner filed a reply (doc. 24).  Petitioner also filed a "Motion for Emergency Order:  Injunction/Prohibition Against Initiation of Probation" (doc. 25).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 20).[1]  Petitioner was charged in the Circuit Court in and for Escambia County,

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (docs. 20, 22, 28).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Florida, Case No. 2006-CF-2376, with one count of contracting without a license (Count 1), one count of fraud for violating a "stop work" order (Count 2), nine counts of theft (Counts 3–11), and one count of unlawfully conducting or participating in an enterprise through a pattern of racketeering activity (Count 12) (Ex. A).  On March 12, 2007, Petitioner entered a written plea agreement and sentence recommendation, pursuant to which the parties agreed that Petitioner would enter a nolo contendere plea as charged to Counts 1, 2, and 12 (renumbered to Counts 1, 2, and 3), the State would drop the theft charges, and Petitioner would be sentenced to "a period of incarceration in prison of not less than 3 years and no more than 6 years to be followed by a period of probation to be determined by the Court," and that Petitioner would pay restitution to the victims "in an amount to be determined by the Court—could be more than $100,000" (Ex. B).  The same day, the court held a change of plea hearing, during which the court conducted a colloquy and accepted Petitioner's plea as freely, voluntarily, and knowingly entered (Ex. C).  On April 26, 2007, Petitioner was sentenced to six (6) years in prison followed by a term of fifteen (15) years of probation on Count 1, and concurrent terms of five (5) years in prison on Counts 2 and 3, to run concurrently with the prison sentence on Count 1, and with no probation to follow (Ex. E at 105–68, Ex. F).  Petitioner was awarded two (2) days of pre-sentence jail credit on all counts (*id.*).  The court ordered Petitioner to pay restitution to the victims, but reserved jurisdiction for a period of ninety (90) days to determine the amount (Ex. E at 164–65).

On October 8, 2009, in Case No. 1D08-6234, the Florida First District Court of Appeal ("First DCA") granted Petitioner leave to file a belated direct appeal (Ex. G).  Milton v. State, 27 So. 3d 72 (Fla. 1st DCA 2009) (Mem).  In Case No. 1D10-377, Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that the appeal was "wholly frivolous" (Ex. J).  Petitioner filed a pro se initial brief (Ex. K).[2]  The First DCA affirmed the

---

[2] On May 4, 2010, while his direct appeal was pending, Petitioner filed a motion to correct sentencing error, pursuant to Rule 3.800(b) of the Florida Rules of Criminal Procedure, arguing that the oral pronouncement of sentence differed from the written sentence, and the trial court misadvised him as to the minimum and maximum penalties he faced if he entered a plea (Ex. H).  On May 19, 2010, the state circuit court summarily denied the motion on the ground that the written sentence accurately reflected the oral pronouncement at the sentencing hearing, and Petitioner's challenge to his conviction pursuant to the plea was not properly raised in a Rule 3.800(b)(2) motion (Ex. I).  Petitioner then raised the challenge to his plea in his brief on direct appeal of his conviction (*see* Ex. K).

judgment per curiam without written opinion on October 15, 2010, with the mandate issuing November 10, 2010 (Exs. L, M). Milton v. State, 992 So. 2d 252 (Fla. 1st DCA 2010) (Table).

On June 6, 2008, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. O). In an order rendered October 15, 2008, the state circuit court denied the motion in part and dismissed it in part (Ex. P). On April 30, 2009, in Case No. 1D08-6290, the First DCA granted Petitioner leave to file a belated appeal of the decision (Ex. Q). Milton v. State, 7 So. 3d 652 (Fla. 1st DCA 2009) (Mem). The First DCA subsequently affirmed the decision per curiam without written opinion on September 22, 2009, with the mandate issuing December 3, 2009 (Exs. Q, R). Milton v. State, 22 So. 3d 543 (Fla. 1st DCA 2009) (Table).

On January 22, 2009, Petitioner filed a motion to correct illegal sentence and a "Motion to Dismiss Counts 1, 2, and 12 of the Information Under Rule 3.190(b)(c)(d)(n)(o) for Lack of Jurisdiction" (Exs. U, V). The state circuit court dismissed the motions as impermissibly successive on February 4, 2009 (Ex. W). Petitioner appealed the decision to the First DCA, Case No. 1D09-2384 (Ex. X). The First DCA affirmed the decision per curiam without written opinion on January 15, 2010, with the mandate issuing March 15, 2010. Milton v. State, 29 So. 3d 295 (Fla. 1st DCA 2010) (Table).

Petitioner filed the instant federal habeas action on October 11, 2011 (doc. 1). Respondent concedes the petition is timely (doc. 20 at 7–8).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S.

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

 Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

 If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."

Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the

decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. See Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995)

---

[4] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
      (A)  the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i)  there is an absence of available State corrective process; or
          (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

(quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan v. Henry</u>, 513 U.S. 364.  The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  <u>Duncan</u>, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  <u>Baldwin v. Reese</u>, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In <u>Baldwin</u>, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*, 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in <u>McNair v. Campbell</u>, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  <u>McNair</u> [<u>v. Campbell</u>], 315 F. Supp. 2d at 1184 (quoting <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

---

[5] The petitioner in <u>Duncan</u> raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

416 F.3d at 1302-03 (citations omitted).[6]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement.  After Duncan, however, the Eleventh Circuit has taken a more narrow approach.  For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state

---

[6] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[7] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

Ground One:  "Plea was involuntary in violation of the United States Constitution and United States Laws."

Ground Four:  "Counsel's ineffective assistance of counsel [sic] violated Defendant's 6th Amend. and 14th Amendment rights."[8]

In Grounds One and Four, Petitioner alleges his plea was unconstitutional because defense counsel and the trial court affirmatively misadvised him regarding the minimum and maximum penalties he faced, counsel misadvised him that his sentence would not exceed six years, and counsel and the court failed to advise him that he would face the statutory maximum sentence if he violated his probation on Count 3 (the racketeering count) (doc. 1 at 4, 5; doc. 24 at 3–5). Petitioner also asserts his "mental condition" at the time he entered his plea rendered it unconstitutional (*id.*). In Ground Four, Petitioner claims defense counsel was ineffective for (1) failing to file a motion to

---

[8] For organizational purposes, the undersigned is consolidating Petitioner's claims that challenge the constitutionality of his plea.

withdraw his plea and a direct appeal of the conviction after Petitioner asked him to do so, (2) failing to investigate Petitioner's theory of defense and instead accepting the State's theory, and (3) denying Petitioner an opportunity to confront his accusers (*id.*).

Respondent concedes Petitioner exhausted all of these claims in the state courts by raising them on direct appeal of his conviction and in his Rule 3.850 motion (doc. 20 at 16–20, 33). Respondent contends Petitioner failed to establish that the state courts' adjudication of any of his claims involved an unreasonable determination of the facts, or was contrary to or an unreasonable application of clearly established federal law (*id.* at 21–31, 34–42).

1.       Clearly Established Federal Law

When a defendant challenges his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in Strickland v. Washington, 466 U.S. 668 (1984) applies. *See* Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).  To obtain relief under Strickland, Petitioner must establish:  (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 688.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697; Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances."  *See* Strickland, 466 U.S. at 691.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.  All the pertinent facts normally cannot be known

> unless witnesses are examined and cross-examined in court.  Even then the truth will
> often be in dispute.  In the face of unavoidable uncertainty, the defendant and his
> counsel must make their best judgment as to the weight of the State's case.  Counsel
> must predict how the facts, as he understands them, would be viewed by a court. . .
> . Questions like these cannot be answered with certitude; yet a decision to plead
> guilty must necessarily rest upon counsel's answers, uncertain as they may be.
> Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably
> competent attorney will turn out to be mistaken either as to the facts or as to what a
> court's judgment might be on given facts.  That a guilty plea must be intelligently
> made is not a requirement that all advice offered by the defendant's lawyer withstand
> retrospective examination in a post-conviction hearing.

McMann v. Richardson, 397 U.S. 759, 769–70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases."  Hill, 474 U.S. at 56–57 (quoting McMann, 397 U.S. at 771).  Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused.  Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991).  Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance."  Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990).  The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer."  Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam).  "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial."  Id.  This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant.  Id.  Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea.  Id. at 1509.

To meet the prejudice prong of the Strickland standard in a plea situation, Petitioner must establish that prove that "counsel's constitutionally ineffective performance affected the outcome of the plea process."  Hill, 474 U.S. at 59.  Often this analysis hinges upon whether eradication of

the error would have led counsel to change his recommendation as to the plea, which in turn generally depends on whether the outcome of a trial would have been substantively different. *Id.* at 59–60. While counsel can be deemed ineffective under Strickland for failing to provide proper advice during the plea process, Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *See* Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991). A conclusory, after-the-fact statement that Petitioner would not have pled guilty, without more, is insufficient to establish prejudice under Strickland. *See* Diaz, 930 F.2d at 835; *see also* Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) (though Coulter evidenced, through his counteroffer to the state, a willingness to enter into a plea agreement, he offered no further proof to show that he would have accepted the state's plea offer of life without parole absent his lawyers' alleged errors; therefore, Coulter failed to establish any prejudice stemming from counsel's alleged deficient performance); Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (7th Cir. 1986).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.    Federal Review of State Court Decision

Petitioner raised the claims of ineffective assistance of counsel asserted in Grounds One and Four as Grounds 3, 5, 6, and 7 in his Rule 3.850 motion (Ex. O at 19–20, 25–31). In the state circuit court's written decision denying the motion, the court correctly identified the deficient performance and prejudice prongs of the Strickland standard as the applicable legal standard (Ex. P at 47–48). The court adjudicated the claims as follows:

Defendant's Ground 3:
*Trial counsel failed to file a direct appeal as Defendant requested.*

Defendant claims that trial counsel was ineffective for failing to file a direct appeal of his judgment and sentence as Defendant requested. Defendant claims that trial counsel erroneously advised him that he would receive a harsher sentence if he filed an appeal, and that the only issue that could have been raised on appeal was that of an illegal sentence.

"Claims alleging ineffective assistance of trial counsel in failing to file a notice of appeal fo the conviction are to be raised by petition for belated appeal, filed in the appellate court to which the appeal should have been taken." Bowers v. State, 939 So. 2d 337 (Fla. 2nd DCA 2006); see McIntyre v. State, 789 So. 2d 478 (Fla. 4th DCA 2001); see also Florida Rule of Appellate Procedure 9.141(c).

Therefore, this claim must be dismissed.  The Court expresses no opinion regarding the merits of any subsequent challenge Defendant may chose [sic] to bring in a properly supported motion for belated appeal with the First District Court of Appeal.
. . . .

Defendant's Ground 5:
*Trial counsel was ineffective for failing to conduct an adequate pre-trial investigation.*

Defendant claims that trial counsel was ineffective for failing to research the defense of assumption of risk, for failing to depose witnesses, and for failing to make any "pre-trial motions," specifically, a motion for change of venue.

In order for the Court to find that counsel was deficient for failing to file a motion, a reasonable probability that the motion would have changed the outcome of the proceedings must exist.  In this case, Defendant does not specifically allege what action or inaction by trial counsel would have caused him not to enter a plea and insist on a trial.  Therefore, Defendant has not properly alleged how he was prejudiced by any deficient performance of counsel as it relates to this claim.

Even if Defendant's claim that trial counsel failed to investigate a defense was facially sufficient, Defendant's own testimony at sentencing was not consistent with a defense of innocence.  He apologized several times and stated that he "just got into a situation where I just couldn't, I wasn't able to get out of it."[FN 15: reference to excerpt from transcript of sentencing hearing]  Defendant asked the court for a suspended sentence in order to be able to work to repay "the debt that I owe to these homeowners."[FN 16: reference to excerpt from transcript of sentencing hearing] Defendant conceded his own guilt and cannot disavow those statements.  See Davis v. State, 938 So. 2d 555, 557 (Fla. 1st DCA 2006) ("An appellant is not entitled to go behind sworn representations made to the court in a postconviction proceeding.")

Although Defendant claims that he instructed trial counsel to "prepare for trial with the doctrine of 'assumption of risk' being the foundation of defense strategy," counsel cannot be found deficient for failing to prepare such a defense if it has no merit.  Assumption of risk is an affirmative defense to a tort claim (civil law).  As the instant case was a criminal matter, an assumption of risk argument would not have been appropriate.[FN 17:  The State argued at sentencing that all

contracts between Defendant and the homeowners were void because Defendant did not have a contractor's license.  See Attachment 8, p. 23.  Furthermore, any portion of any contract which purports to absolve Defendant of criminal liability would be unenforceable.]  See Demurijan v. State, 727 So. 2d 324, 326 (Fla. 4th DCA 1999) ("Where matters of litigation strategy are concerned, a high degree of deference to counsel's decisions is given."), citing Strickland at 2065.

Defendant further claims that trial counsel was deficient for failing to depose the following witnesses:  Stephanie D. Milton, James Long, and "Tom."  This Court's order of April 16, 2008,[FN 18:  reference to order] which granted Defendant leave to file this amended motion, specifically explained to Defendant that in order to raise a facially sufficient claim, Defendant must "apprise the court of the names of witnesses, *the substance of their testimony, and how the omission prejudiced the outcome of the trial."*  Highsmith v. State, 617 So. 2d 825, 826 (Fla. 1st DCA 1993) (emphasis added).  In the instant amended motion, Defendant does not state what these witnesses would have allegedly said in a deposition that would have changed the outcome of these proceedings.  Therefore, this claim must be denied as facially insufficient.

Moreover, even if this claim was facially sufficient, during Defendant's plea colloquy, he was placed under oath and given an opportunity to inform the Court of any concerns he had.  The Court asked Defendant whether he was satisfied with the advice and assistance of his attorney.[FN 19:  reference to excerpt of transcript of plea hearing]  When the Court inquired, Defendant could have told the Court that his counsel failed to take these deposition or otherwise investigate Defendant's defense.  However, Defendant did not elect to do so.  Instead, Defendant told the Court, under oath, that he was satisfied with his counsel's assistance and that he wanted to take the plea.

Defendant has not demonstrated [ ] any action or inaction taken by trial counsel in investigating his case that would overcome the strong presumption that counsel was acting reasonably according to his professional judgment.  The facts before the Court do not indicate that counsel was deficient for suggesting that Defendant enter a plea considering the totality of the circumstances.  Therefore, Defendant is not entitled to relief.

<u>Defendant's Ground 6:</u>
*Trial counsel was ineffective for intentionally misadvising Defendant regarding the nature of the charges against him and the terms of the plea agreement; Defendant was not competent to enter a plea because he was under the influence of medications.*

Defendant claims that trial counsel deceived Defendant regarding the charges against him, specifically by not informing him that he was entering a plea to a first-degree felony punishable by a maximum sentence of 30 years.  Defendant also claims that the positioning and abbreviation of the charges on the plea agreement was deceptive.  Further, Defendant alleges that trial counsel coerced Defendant into taking the plea by requiring his presence in court, and "exerting undue pressure" on Defendant and his grandmother.

The Court established, *supra*, (Ground 4), that Defendant entered his plea knowingly and voluntarily.  Defendant's plea agreement does not abbreviate the charges and clearly states that Defendant faced a maximum of 30 years state prison on count three (the first-degree felony).[FN 20:  reference to plea agreement and sentence recommendation]  However, the agreement also specifically outlines "Additional terms of plea entry and sentence recommendation agreed upon by the State and Defendant:  The Court will impose a period of incarceration in prison of not less that [sic] 3 years and no more than 6 years."  Therefore, Defendant was also aware that he was not being sentenced to 30 years of imprisonment at the time of entering his plea.

Defendant also alleges in the instant ground that he was not mentally competent to proceed, and that trial counsel was deficient for allowing Defendant to enter a plea despite being under the influence of anti-depressants and anti-anxiety medications.  Defendant further claims that he thought that the Court was referring to illicit street drugs when Defendant was asked if he was under the influence of any drugs.

> "In order to evaluate this claim in a postconviction setting, a court must answer two questions:  '1) whether the court could make a meaningful retrospective evaluation of the defendant's competence at the time of trial; and, if so, 2) whether the defendant was in fact competent at the time of trial.'  Some of the factors to be considered include:  the defendant's appreciation of the charges and the range and nature of possible penalties; the ability to assist one's attorney and disclose relevant facts surrounding the alleged offense; the ability to manifest appropriate courtroom behavior; and the ability to testify relevantly."

Lawrence v. State, 969 So. 2d 294, 304 (Fla. 2007), quoting Jones v. State, 740 So. 2d 520, 523 (Fla. 1999).  "The defendant has the burden of presenting substantial evidence establishing incompetence at the time of the plea."  Id. at 301.  See also Muhammad v. State, 494 So. 2d 969, 973 (Fla. 1986) ("one need not be mentally healthy to be competent to stand trial.")[FN 21:  Section 916.12(1), Florida Statutes, requires that a defendant have a "sufficient present ability to consult with her to his

lawyer with a reasonable degree of rational understanding," and a "rational as well as factual understanding of the proceedings against her or him," to be considered competent.  See also Hill v. State, 473 So. 2d 1253, 1257 (Fla. 1985).]

Defendant expressed at the time of entering his plea that he didn't understand how 12 counts had been subsumed into racketeering as predicate offenses.[FN 22: reference to excerpt of transcript of plea hearing]  The Court and the State then explained that instead of pursuing Defendant on 12 counts, the plea agreement only included three counts which would result in less points on his scoresheet.  Defendant then affirmed that he understood.  Otherwise, Defendant stated throughout the proceeding that he understood what was happening.  Furthermore, Defendant appeared competent to the Court.  Even if Defendant was on "a combination of strong narcotic pain meds. and psychotropic meds." as he alleges, it is still entirely possible that he was competent to enter a plea.  Since the burden is on Defendant to demonstrate that he was not competent, and he has not explained how he was incompetent other than allegedly taking drugs prescribed to him by a doctor, presumably to stabilize his mental and physical condition, the Court cannot find that he was incompetent to enter a plea.  Therefore, counsel was not deficient to "allowing" Defendant to enter the plea.  Defendant is not entitled to relief on this claim.

<u>Defendant's Ground [7]:</u>
*Trial counsel was ineffective for failing to inform Defendant that he had a right to be present at depositions which denied Defendant his right to confront and cross-examine witnesses.*

Florida Rule of Criminal Procedure 3.180(a) provides:

Presence of Defendant.  In all prosecutions for crime the defendant shall be present:  (1) At first appearance; (2) When a plea is made, unless a written plea of not guilty shall be made in writing under the provisions of Rule 3.170(a); (3) At any pre-trial conference, unless waived by Defendant in writing; (4) At the beginning of the trial during the examination, challenging, impanelling, and swearing of the jury; (5) At all proceedings before the court when the jury is present; (6) When evidence is addressed to the court outside the presence of the jury for the purpose of laying the foundation for the introduction of evidence before the jury; (7) At any view by the jury; (8) At rendition of the verdict; (9) At the pronouncement of judgment and the imposition of sentence.

Defendant erroneously bases his argument on Fla. R. Crim. P. 3.190(j) which safeguards a defendant's right to cross-examination at a deposition only in the

specific instance when "a prospective witness resides beyond the territorial jurisdiction of the court or may be unable to attend or be prevented from attending a trial or hearing . . ." Defendant waived his right to cross-examine witnesses at a trial when he entered a plea. The Court specifically informed Defendant that "by entering this plea you are giving up your right to a trial, and all the trial rights that go along with it . . ."[FN 23:  reference to excerpt of transcript of plea hearing]  As Defendant was not entitled to be present at the depositions taken by the State in this case, trial counsel cannot be found deficient for failing to inform Defendant that he had a right to be present.  Furthermore, in the context of <u>Strickland</u>, Defendant has not demonstrated how his attendance at the depositions would have changed the outcome of the proceedings.  Defendant is not entitled to relief on this claim.

(Ex. P at 50–51, 53–59).

Based upon the foregoing, the state circuit court denied Petitioner's Rule 3.850 motion except as to his specific claim that counsel failed to file a direct appeal (*id.* at 59).  As to that specific claim, the court dismissed it without prejudice to Petitioner's pursuing the claim in a proper petition with the court of proper jurisdiction (*id.*).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. R).

Additionally, Petitioner took advantage of the circuit court's suggestion and filed a petition for a belated direct appeal with the First DCA.  The First DCA granted the petition, and Petitioner pursued his direct appeal.  He filed a pro se brief, arguing that the trial court and defense counsel affirmatively misadvised him of the maximum penalty he faced if he entered a plea of nolo contendere (Ex. K at 22–24).  With regard to defense counsel, he asserted counsel advised him off the record that if he proceeded to trial he would receive "35–45 years" (*id.* at 22).  He asserted counsel also advised him that by accepting the plea agreement, the most he would receive was a "combination sentence" which would not exceed 6 years (*id.*).  He asserted counsel explained that the judge could choose to sentence him to a prison term and a term of probation, and the minimum prison sentence would be 3 years, but counsel did not explain that he could face a 6-year prison term followed by 15 years of probation (*id.*).  He additionally asserted counsel failed to advise him he could face a 30-year prison sentence if he violated his probation (*id.*).  He asserted he would not have accepted the plea agreement if counsel had correctly advised him (*id.*).  With regard to the trial court, Petitioner argued the court violated Rule 3.172(7) of the Florida Rules of Criminal Procedure by affirmatively misadvising him regarding the minimum and maximum penalties he faced, and

failing to explain he faced a 30-year prison sentence if he violated his probation (*id.* at 22–24).  The First DCA affirmed the judgment of conviction and sentence without written opinion (Ex. L).

Initially, Petitioner is not entitled to federal relief on his claim of ineffective assistance of counsel with respect to counsel's failure to file a direct appeal.  As discussed *supra*, Petitioner presented this claim to the state courts, the First DCA granted relief on the claim, and Petitioner pursued a direct appeal of his conviction and sentence.  Petitioner has received all the relief to which he is entitled on this claim; therefore, it is moot.

Additionally, Petitioner failed to show he received deficient advice from counsel regarding the maximum sentence he faced if he entered a plea.  Petitioner asserts counsel was deficient for advising him "if he proceeded to trial he would receive "'35–45 years.'" (*see* Ex. K at 22).  However, this was a reasonable estimate, given that the statutory maximums were five years on Count 1, five years on Count 2, and thirty years on Count 3.  Further, the written plea agreement clearly stated that the maximum sentence Petitioner faced on each count was five years on Count 1, five years on Count 2, and thirty years on Count 3 (Ex. B).  Petitioner signed the plea agreement, thereby certifying he read and understood the contents of the agreement, and he understood the maximum period of imprisonment he faced as indicated in the agreement (*id.*).  Therefore, Petitioner failed to show that counsel was ineffective with regard to advising him of his maximum sentence exposure if he went to trial.

Petitioner also alleges "counsel explained [ ] that by accepting the plea agreement, the most he would receive was a combination sentence which in no way could exceed 6 years" (*see* Ex. K at 22; *see also* doc. 24 at 4).  However, the written plea agreement, which Petitioner certified he read and understood, clearly provided that the court would impose "a period of incarceration in prison of not less than 3 years and no more than 6 years to be followed by a period of probation to be determined by the Court." (*id.*).  Petitioner stated under oath at the plea hearing that he reviewed the provisions of plea agreement with defense counsel and understood them (Ex. C at 86–87).  He also responded, "No sir," when asked whether anyone promised him anything except what was set forth in the plea agreement (*id.* at 89).  A defendant's solemn declarations in court carry a strong presumption of truth.  Blackledge v. Allison, 431 U.S. 63, 71, 97 S. Ct. 1621, 1628, 52 L. Ed. 2d 136 (1977).  The advantages of entering a plea may only be secured if dispositions by plea are accorded

a great measure of finality.  *Id.*  Recognizing that a prisoner more often than not "has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea" the courts have accorded great deference to a defendant's statements during a plea colloquy and have been reluctant to allow a defendant to go behind his own sworn testimony.  *Id.*  Based upon the record, Petitioner failed to show he did not understand his maximum sentence exposure, and that he could receive a total term of imprisonment of 6 years followed by a term of 15 years of probation.  Therefore, he failed to demonstrate that the state court's adjudication of this ineffective assistance of counsel claim was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of Strickland.

Petitioner has likewise failed to show he is entitled to relief on his claim that the trial court misadvised him of the maximum sentence on Count 3, the first degree felony.  In his brief on direct appeal, Petitioner argued only that the court violated Rule 3.172(7) of the Florida Rules of Criminal Procedure by affirmatively misadvising him regarding the maximum penalty he faced.  However, a violation of state law is not a basis for federal habeas relief.  Further, although the trial court erred in stating at the plea hearing that Count 3 "carries a maximum incarceration of 5 years in the state prison" (Ex. C at 87), Petitioner failed to show a reasonable probability he would not have entered the plea but for this misstatement.  As previously discussed, Petitioner signed the written plea agreement, which clearly stated that the maximum penalty for Count 3 was 30 years (Ex. B). Further, at the subsequent sentencing hearing, the trial court correctly stated that the statutory maximum for that count was 30 years and then heard a lengthy statement from Petitioner, at which time Petitioner could have expressed any confusion regarding his understanding of the maximum sentence he could receive (Ex. D at 108–26).  Petitioner gave no indication he was confused about the maximum sentence he faced (*id.*).  Therefore, Petitioner failed to demonstrate that the state court's adjudication of this claim was contrary to or an unreasonable application of clearly established federal law.  *See, e.g.*,  United States v. Dorelus, 469 F. App'x 801, 802 (11th Cir. 2012) (district court did not plainly err in accepting defendant's guilty plea; although district court committed a plain error when it advised defendant that statutory maximum penalty was twenty years imprisonment, defendant failed to provide any evidence that there was a reasonable probability he

would not have entered the plea had he known that the statutory maximum penalty was five years of imprisonment instead of twenty years of imprisonment).

Additionally, because Petitioner was informed of the 30-year statutory maximum sentence on Count 3, he was adequately informed of the maximum penalty he faced if he violated his probation.   The incarcerative and probationary components of the sentence form the single maximum punishment.  Therefore, Petitioner failed to show his plea was unknowing or involuntary in this regard.

Petitioner additionally failed to show that his "mental condition" at the time he entered his plea rendered his plea unconstitutional.  The Due Process Clause of the Fourteenth Amendment prohibits states from trying or convicting a defendant who is mentally incompetent. *See* Pate v. Robinson, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966).  The Supreme Court set the standard to be used in determining mental competency as whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."  Dusky v. United States, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed 2d 824 (1960) (per curiam); Drope v. Missouri, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); *see also* Indiana v. Edwards, 554 U.S. 164, 128 S.Ct. 2379, 171 L. Ed. 2d 345 (2008).

In Drope, the Court elaborated as follows:

[t]he import of our decision in Pate v. Robinson is that evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient.  There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.  That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

Drope, 420 U.S. at 180.

The Eleventh Circuit Court of Appeals has applied and expounded upon these standards.  "[N]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial."  Medina v. Singletary, 59 F.3d 1095, 1107 (11th

Cir. 1995) (citation omitted).  A Pate analysis must focus on "what the trial court did in light of what it then knew, [and] whether objective facts known to the trial court were sufficient to raise a bona fide doubt as to the defendant's competency."  Fallada v. Dugger, 819 F.2d 1564, 1568 (11th Cir. 1987) (citations omitted).  A petitioner who makes a substantive competency claim, contending that he was tried and convicted while mentally incompetent, "is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence." James v. Singletary, 957 F.2d 1562, 1571 (11th Cir. 1992).  This standard is in contrast to a petitioner who makes a procedural competency claim alleging that the trial court failed to hold a competency hearing after his competency was put at issue.  To prevail on a procedural competency claim, "a petitioner must establish that the state trial judge ignored facts raising a 'bona fide doubt' regarding the petitioner's competency to stand trial."  Id. at 1572 n.15 (citing Fallada, 819 F.2d at 1568).  A petitioner who presents "clear and convincing evidence" which creates a "real, substantial and legitimate doubt" as to his competence is entitled to an evidentiary hearing on his substantive competency claim.  Medina, 59 F.3d at 1106 (quoting James, 957 F.2d at 1573).  However, the standard of proof is high, and "the facts must positively, unequivocally, and clearly generate the legitimate doubt."  Card v. Singletary, 981 F.2d 481, 484 (11th Cir. 1992) (quotations omitted). Relevant information may include evidence of a defendant's irrational behavior, demeanor at trial, or prior medical opinion.  See Watts v. Singletary, 87 F.3d 1282, 1287 (11th Cir. 1996).

        A lifelong history of mental illness and emotional problems does not demonstrate incompetency without a specific showing of how these difficulties generated a substantial doubt as to the defendant's competency at the time in question.  See Medina, 59 F.3d at 1106; Card, supra. Similarly, the fact that the accused is undergoing treatment with psychiatric drugs, while relevant, does not alone prove incompetence.  See Sheley v. Singletary, 955 F.2d 1434, 1438–39 (11th Cir. 1992).  In order to establish incompetence, evidence must establish that the drugs affected the accused to the point that he could not effectively consult with his attorney and could not understand the proceedings.  See id. at 1439.

        The transcript of the plea hearing demonstrates the trial court asked Petitioner whether he had consumed any alcohol or drugs with the past twenty-four hours, and Petitioner responded, "No, sir." (Ex. C at 88).  The court then asked Petitioner whether he was "on any kind of medication that

would adversely affect [his] ability to make informed decisions," to which Petitioner responded, "No, sir." (*id.*).  Additionally, the transcript is devoid of <u>any</u> indication Petitioner did not have a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or that he did not have a rational, as well as factual, understanding of the plea proceeding.  Moreover, by signing the written plea agreement, Petitioner certified that he had not taken any medication of any kind in the preceding twenty-four hours, and that he entered the agreement with a full understanding of all matters set forth therein (Ex. B).  Therefore, Petitioner failed to demonstrate that the state court's adjudication of his claim of mental incompetency was contrary to or an unreasonable application of clearly established federal law.

The undersigned will next address Petitioner's claims that defense counsel was ineffective for failing to investigate Petitioner's theory of defense, and counsel's denying him the opportunity to confront his accusers.  Initially, during the plea hearing, the trial court specifically asked Petitioner whether he was satisfied with the representation he had received from defense counsel, and Petitioner stated, under oath, that he was satisfied (Ex. C at 89).  Petitioner also stated he understood that by entering the plea, he was giving up his right to a trial and all the trial rights associated with a trial (*id.* at 94–95).  Additionally, Petitioner did not allege in his federal petition the theory of defense that counsel should have investigated; and to the extent he relies upon the "assumption of risk" theory he argued in his Rule 3.850 motion, he failed to show this was an available defense.  The state court determined that assumption of risk was a defense available in Florida <u>civil</u> cases, not criminal.  This court must abide by the state court's interpretation of state law.  *See* <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).  Therefore, this court is bound by the state court's determination that assumption of risk was not an available defense.  Further, although Petitioner alleged in his Rule 3.850 motion that counsel should have deposed Stephanie D. Milton (Petitioner's wife), James Long, and "Tom," who would have testified that "he had no criminal intent" (*see* Ex. O at 26), Petitioner provided no specific allegations or evidence of the substance of their testimony.  Therefore, he failed to show that counsel's failure to depose them was unreasonable, or that there was a reasonable probability of a different outcome had counsel deposed them.

Petitioner likewise failed to show ineffective assistance with respect to counsel's "failure to protect Defendant's constitutional right to cross-examine [ ] witnesses," by failing to advise him of his "Constitutional right to be present" at depositions of the State's witnesses (*see* Ex. O at 30–31). As the state court determined, Petitioner had no state law right to attend the depositions.  Further, although the Confrontation Clause "guarantees the defendant a face-to-face meeting with witnesses appearing before the <u>trier of fact</u>," <u>Coy v. Iowa</u>, 487 U.S. 1012, 1016, 108 S. Ct. 2798, 101 L. Ed. 2d 857 (1988) (emphasis added), the Supreme Court has not extended this right to pre-trial depositions.  Moreover, Petitioner failed to show a reasonable probability that his attendance at the depositions would have changed the outcome of the proceedings.   Therefore, he failed to demonstrate that the state court's denial of these allegations of ineffective assistance of counsel was contrary to or an unreasonable application of <u>Strickland</u>.

      B.     <u>Ground Two:  "Defense counsel labored under an active and actual conflict of interest in violation of the U.S. Constitution."</u>

Petitioner claims he and defense counsel were each having a sexual relationship with the same woman during counsel's representation, and counsel used his position to obtain a harsher sentence than Petitioner agreed to in the plea agreement, in order to remove Petitioner from the "love triangle" (doc. 1 at 4; doc. 24 at 5).

Respondent concedes Petitioner exhausted this claim in state courts by raising it in his Rule 3.850 motion (doc. 20 at 25–26).  Respondent contends Petitioner failed to establish that the state courts' adjudication of any of his claims involved an unreasonable determination of the facts or was contrary to or an unreasonable application of clearly established federal law (*id.* at 26–31).

      1.     Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.  However, there is a limited presumption of prejudice where counsel has an actual conflict of interest.  <u>Strickland</u>, 466 U.S. at 691 (citing <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980)).  This presumption, which requires automatic reversal of a conviction, applies only where an attorney is forced to represent co-defendants over his own objection, unless the court has found no conflict. <u>Mickens v. Taylor</u>, 535 U.S. 162, 167–68, 122 S. Ct. 1237, 1241–42, 152 L. Ed. 2d 291 (2002) (discussing <u>Holloway v. Arkansas</u>, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978)).  The

<u>Mickens</u> Court noted that while the Courts of Appeals had "unblinkingly" applied <u>Sullivan</u> to all kinds of purported ethical conflicts:  "[T]he language of <u>Sullivan</u> itself does not clearly establish, or indeed even support, such expansive application.  '[U]ntil,' it said, 'a defendant shows that his counsel *actively represented* conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.'"  <u>Mickens</u>, 535 U.S. at 175 (quoting <u>Sullivan</u> with added emphasis, other citations omitted).  Thus, the Eleventh Circuit held that Supreme Court precedent does <u>not</u> clearly establish that the <u>Sullivan</u> rule of presumed prejudice applies in other conflict situations, that is, outside concurrent, multiple representation circumstances.  *See* <u>Schwab v. Crosby</u>, 451 F.3d 1308, 1324–25, 1327–28 (11th Cir. 2006).  In conflict situations where prejudice is not presumed, a petitioner must demonstrate that an adverse effect on counsel's performance flowed from the conflict of interest.  *See* <u>Hunter v. Sec'y Dep't of Corr.</u>, 395 F.3d 1196, 1201–02 (11th Cir. 2005); <u>Herring v. Sec'y, Dep't of Corr.</u>, 397 F.3d 1338, 1357–58 (11th Cir. 2005).

2.    Federal Review of State Court Decision

Petitioner raised this claim as Ground 2 in his Rule 3.850 motion (Ex. O at 15–19).  The state court adjudicated the claim as follows:

<u>Defendant's Ground 2:</u>
*Trial counsel was ineffective for failing to withdraw from Defendant's case when he realized that there was a "conflict of interest."*

Defendant claims that he and trial counsel "both had a personal relationship with the same woman coterminously" and that this woman divulged personal information to Defendant about trial counsel, "which placed a tremendous 'burden' upon counsel."  Defendant further claims that trial counsel used his position to "settle a personal vendetta."

"[I]n order to establish an ineffectiveness claim premised on an alleged conflict of interest, the defendant must 'establish that an actual conflict of interest adversely affected his lawyer's performance.'  A lawyer suffers from an actual conflict of interest when he or she 'actively represents conflicting interests.'  To demonstrate an actual conflict, ***the defendant must identify specific evidence in the record that suggests that his or her interests were compromised.  A possible, speculative or merely hypothetical conflict is 'insufficient to impugn a criminal conviction.'"***

Sliney v. State, 944 So. 2d 270 (Fla. 2006) (emphasis added), quoting Cuyler v. Sullivan, 446 U.S. 335 (1980).  See also Herring v. State, 730 So. 2d 1264, 1267 (Fla. 1998).

>    Defendant has failed to demonstrate how allegedly having a mutual friend with trial counsel compromised Defendant's interests.[FN 10:  In this Court's order filed April 16, 2008, Defendant's previous motion for postconviction relief was struck and Defendant was granted leave to file an amended motion pursuant to Spera v. State, 971 So. 2d 754 (Fla. 2007).  In that order, the Court advised Defendant:  A facially sufficient 3.850 motion must allege "specific facts, that when considering the totality of the circumstances, are not conclusively rebutted by the record and that demonstrate a deficiency on the part of counsel which is detrimental to the defendant."  Kennedy v. State, 547 So. 2d 912, 913 (Fla. 1989).  Moreover, any allegation of prejudice in fact is "strictly applied" and must be "*positive, specific and factual*."  Richardson v. State, 677 So. 2d 43, 44 (Fla. 1st DCA 1996) (emphasis added).  See also Harris v. State, 801 So. 2d 973 (Fla. 2d DCA 2001).  See Attachment 1.]  Even if Defendant's claim was facially sufficient, trial counsel was not representing a conflicting interest merely because he and Defendant knew the same woman.  Furthermore, trial counsel was privately retained, and Defendant could have terminated counsel's representation.  The Court does not find that the lack of specific detail in the instant claim could be remedied by any further amendments made in good faith.  Therefore, this claim is denied as facially insufficient.

(Ex. P at 49–50).

In the instant case, Petitioner did not allege circumstances showing an actual conflict of interest, that is, that this was a case of concurrent, multiple representation of co-defendants by defense counsel.  Therefore, the Cuyler standard does not apply and Petitioner must demonstrate prejudice under Strickland.  Petitioner failed to show that counsel's alleged relationship with the same woman as Petitioner adversely affected counsel's performance.  Although he alleges the relationship resulted in Petitioner's receiving a harsher sentence than set forth in the plea agreement, Petitioner's actual sentence of a total of 6 years of imprisonment followed by a 15-year term of probation was not harsher than the sentence agreed by the parties in the plea agreement.  See Hunter, 395 F.3d at 1201–02.  Therefore, the state court's adjudication of this claim was not contrary to or an unreasonable application of clearly established federal law.

>    C.    Ground Three:  "Court lacked jurisdiction and yet proceeded in violation of the U.S. Constitution and laws of the United States."

Petitioner asserts the trial court lacked jurisdiction to convict and sentence him, because the charging document was fatally defective (doc. 1 at 5).  He also asserts the trial court lacked jurisdiction to order him to pay $100,000.00 in restitution, because the court failed to hold a hearing on the amount of restitution within 90 days from the date of sentencing (*id.*).  Petitioner also contends the trial court lacked jurisdiction to rule on his postconviction motions, because his motion to disqualify the presiding judge was pending during that time; and the trial court's ruling on his motions violated Florida Statutes § 38.10 and Rule 63 of the Federal Rules of Civil Procedure (*id.*).

Respondent contends none of these issues present federal constitutional claims; therefore, they are not cognizable on federal habeas review (doc. 20 at 32).

In Petitioner's reply, he contends this federal court should review each of these sub-claims "in the name of 'manifest injustice'" (doc. 24 at 2).  He contends the alleged trial court errors constitute "blatant disregard for the protections of the U.S. Constitution" (*id.* at 3).

> 1.   Sub-claim 1:  trial court lacked jurisdiction because the charging document was fatally defective

In Petitioner's federal petition, he does not present any specific arguments to support his claim that the charging document was fatally defective and, therefore, the trial court lacked jurisdiction to convict and sentence him (*see* doc. 1 at 5; doc. 24).  The only state court that adjudicated the merits of this claim was the First DCA on direct appeal of Petitioner's conviction.[9] The undersigned will therefore assume Petitioner is now raising the same arguments he presented to the First DCA on direct appeal.

In his initial brief on appeal, Petitioner argued that the trial court lacked jurisdiction to convict and sentence him, because the State failed to allege each essential element of the crimes charged in the information, thereby rendering the information fatally defective (Ex. K at 12–20).  Petitioner specifically argued the information failed to allege the "intent" element of the racketeering count, Count 12 (renumbered as Count 3) (*id.* at 13–15, 18, 19–10).  Petitioner additionally argued

---

[9] Petitioner also raised a jurisdictional challenge, based upon an allegedly defective charging document, in his "Motion to Dismiss Counts 1, 2, and 12 of the Information Under Rule 3.190(B)(C)(D)(N)(O) for Lack of Jurisdiction" (Ex. V).  However, the state courts did not adjudicate the merits of the claim and instead dismissed it on state procedural grounds (Ex. W).  *See* Milton v. State, 29 So. 3d 295 (Fla. 1st DCA 2010) (Table).  Petitioner raised only claims of ineffective assistance of counsel in his Rule 3.850 motion (Ex. O).

the information violated Rule 3.140(k)(5) of the Florida Rules of Criminal Procedure, because it used the disjunctive "and/or" (*id.* at 18).  Petitioner also argued the information failed to comport with Rule 3.140(d)(2), because it failed to sufficiently identify him (*id.*).  He also argued he was "an ecclesiastic corporation sole" and had both a corporate and "private/personal" identity, but the charging document failed to state in which capacity he was charged (*id.* at 18–19, 20–21).  The First DCA affirmed the judgment of conviction and sentence without written opinion (Ex. L).

The only claim of federal constitutional dimension is Petitioner's claim that the charging document failed to provide adequate notice of the racketeering offense charged in Count 12, because it failed to allege the intent element of the crime; therefore, the trial court was deprived of jurisdiction to convict him of that count.  *See* DeBenedictis v. Wainwright, 674 F.2d 841, 842–843 (11th Cir. 1982) (citations omitted).

It is a basic requirement of due process that the indictment provide a defendant with adequate notice of the crime with which he or she has been charged:

> The criteria [for a valid indictment] are, first, whether the indictment contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, secondly, in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

Russell v. United States, 369 U.S. 749, 763–764, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962) (collecting cases) (internal quotations omitted).  A charging document is adequate to confer jurisdiction if it alleges the elements of the offense, names the complaining witness, and sufficiently describes the circumstances of the alleged offense.  *See* Heath v. Jones, 863 F.2d 815, 821 (11th Cir. 1989).

In the instant case, the Fourth Amended Information charged Petitioner as follows with respect to Count 12:

> Count 12:  The STATE ATTORNEY for the First Circuit of Florida, further charges that from on or about November 8, 2004, and continuing through on or about April 13, 2005, at and in Escambia and Santa Rosa Counties, Florida, PATRICK M. MILTON, SR., while employed by or associated with, an enterprise, as defined by Section 895.02(3), Florida Statutes, to wit:  PATRICK MILTON PAINTING CONTRACTING a/k/a PATRICK MILTON PAINTING CONTRACTORS a/k/a PMPC did conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity, as defined by Sections 895.02(1) and (4), Florida Statutes, that is, he did commit, attempt to commit, conspire to commit, or solicit

> another person to commit two or more incidents in violation of any of the following
> provisions of Florida Statutes:  Section 812.014, Florida Statutes, relating to theft,
> and/or Section 440.104, Florida Statutes, relating to workers' compensation, said
> conduct or participation being in violation of Section 895.03(3), Florida Statutes.

(Ex. A at 26–27).  Counts 3 through 11 of the Fourth Amended Information charged Petitioner with specific acts of theft, identifying the victim or victims, approximate dates, and approximate amounts of money involved in each theft, and alleging Petitioner unlawfully and knowingly obtained or used, or endeavored to obtain or to use the money of each victim with the intent to either temporarily or permanently deprive the victim of a right to the money or a benefit therefrom, or to appropriate the money to the use of himself or another person not entitled thereto (*id.* at 25–26).

Florida courts have recognized the following three elements as requisites to establishing a violation of the Florida RICO Act:  (1) the defendant committed two or more incidents of the conduct enumerated in section 895.02(1) that have the same or similar intents, results, accomplices, victims, methods of commission, or that otherwise are interrelated by distinguishing characteristics, and in doing so, (2) the defendant associated with an enterprise and participated in the conduct of the enterprise's affairs through (3) a pattern of racketeering activity.  *See* Boyd v. State, 578 So. 2d 718, 721 (Fla. 3d DCA 1991); Shimek v. State, 610 So. 2d 632, 634–35 (Fla. 1st DCA 1992).

In the instant case, Petitioner failed to demonstrate that the First DCA applied a rule that contradicts the governing law set forth in the Supreme Court's cases or that the court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from Supreme Court precedent.  Therefore, he has not shown that the First DCA's denial of his jurisdictional claim was contrary to clearly established federal law.

Further, he failed to show that the First DCA unreasonably applied Supreme Court precedent. As previously discussed, the AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 131 S. Ct. at 786.

In this case, the First DCA's denial of Petitioner's claim could have been based upon the theory that the information set forth the elements of the racketeering offense and sufficiently apprised Petitioner of what he must be prepared to meet to defend himself. This theory is not inconsistent with any Supreme Court holding. Therefore, Petitioner failed to demonstrate he is entitled to federal habeas relief on this claim.

       2.     Sub-claim 2: trial court ordered Petitioner to pay $100,000.00 in restitution without holding a hearing within 90 days of entry of judgment

At the sentencing hearing, the court ordered the following with respect to restitution:

> The terms and the conditions of the probation are going to be these.
>
> Number one, he's going to pay restitution. And I'm going to go down the list of the people that he's going to pay restitution to. I'm going to reserve jurisdiction, however, for a period of 90 days to make it [sic] a determination as to the amount of restitution total that's paid to each one of these.
>
> Restitution will be payable to Susan and Lother [sic] Kaemmerling; Catherine and Elijah Griffin; Abdul Ahmad and Juanita Pettigrew [sic]; Lela Petway; Esther Gregory; Hattie Carter; Violet Shoemaker; Sandra James; Claude and Shelton. Excuse me, Claude Shelton and Prisicilla [sic] Shelton-Parson and Mary Williams.
>
> Again, a total on the presentence investigation shows an excess of $100,000. I don't know if that's the full amount of the contracts or if that's the full amount that each of these claim have been taken from them.
>
> And for that reason, I'm going to reserve jurisdiction at this point as to the amount of restitution for a period of 90 days.

(Ex. E at 164–65). The "Judgement [sic], Sentence and Order Placing Defendant on Probation During Portion of Sentence" provided as a condition of probation: "Make restitution: court reserves jurisdiction 90 days to determine amount and manner to be paid. Restitution to be completed by the end of the 14th year of probation." (Ex. F at 208–09).

The undersigned agrees with Respondent's position that Petitioner's claim that the trial court lacked jurisdiction to enter a restitution order does not present a claim of federal constitutional dimension. Further, Petitioner's raising the claim in state court did not constitute fair presentation of a federal claim. In Petitioner's motion to correct illegal sentence, he argued the trial court lacked jurisdiction to enter a restitution order because the court failed to conduct a hearing on the amount

of restitution within 90 days of imposition of sentence (Ex. U at 8). Petitioner did not cite any federal source of law in conjunction with the claim or a case deciding such a claim on federal grounds, nor did he even label the claim "federal." The state circuit court determined the claims presented in the motion to correct sentence were properly raised in a Rule 3.850 motion and should have been raised in Petitioner's previous Rule 3.850 motion; therefore, the motion to correct sentence was impermissibly successive (Ex. W at 16–17). Petitioner appealed the decision to the First DCA, and the appellate court affirmed without written opinion, *see* <u>Milton v. State</u>, 29 So. 3d 295 (Fla. 1st DCA 2010) (Table). Because Petitioner failed to present a federal constitutional claim to either this court or the state courts, and the state court entirely resolved the claim he presented based upon a firmly established and regularly followed state procedural rule, Petitioner is not entitled to a merits review of his claim.

 3. <u>Sub-claim 3: trial court lacked jurisdiction to rule on his postconviction motions, because his motion to disqualify the judge was pending during that time; and the trial court's ruling on his motions violated Florida Statutes § 38.10 and Rule 63 of the Federal Rules of Civil Procedure</u>

 The undersigned again agrees with Respondent's position that Petitioner's jurisdictional challenge to the trial court's entering orders after Petitioner filed a motion to disqualify the presiding judge does not present a federal claim.[10] Initially, Petitioner's reliance upon Rule 63 of the Federal Rules of Civil Procedure is misplaced. Not only does that rule apply only in federal civil cases, but it applies only where "a judge conducting a hearing or trial is <u>unable</u> to proceed." Fed. R. Civ. P. 63 (emphasis added). Petitioner failed to cite any other federal authority, let alone a Supreme Court holding, for his contention that a state court's ruling on a postconviction motion while a defendant's motion to disqualify the judge is pending violates the Constitution or federal law.

 Moreover, Petitioner presented only a state law claim to the state courts. In his brief on appeal of the trial court's denial of his motion to correct sentence and "Motion to Dismiss Counts 1, 2, and 12 of the Information Under Rule 3.190(B)(C)(D)(N)(O) for Lack of Jurisdiction,"

---

[10] The state court docket reflects Petitioner filed the motion to disqualify on October 16, 2008, more than a year after entry of the judgment of conviction and sentence, and the court denied it on March 9, 2009 (Ex. N). Petitioner then filed amended motions on April 20 and 23, 2009, both of which were denied on April 30, 2009 (*id.*). Petitioner appealed the orders, Case No. 1D09-2384, and the First DCA dismissed the appeal on August 13, 2009 (*id.*). While the motions were pending, the state circuit court issued orders denying Petitioner's postconviction motions (*id.*).

Petitioner did not alert the state court that his claim was federal in nature, nor did he cite any federal source of law in conjunction with the claim or a case deciding such a claim on federal grounds (*see* Ex. X at 9–12).  Therefore, he is not entitled to federal review of his claim.

V.      CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of  new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That Petitioner's "Motion for Emergency Order:  Injunction/Prohibition Against Initiation of Probation" (doc. 25) be **DENIED**.

3.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 18th day of September 2012.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).